[883 NYS2d 44]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v CHRISTIAN SULLIVAN, Appellant.

Second Department, May 12, 2009

### APPEARANCES OF COUNSEL

*Steven Banks*, New York City (*Paul Wiener* of counsel), for appellant.

*Daniel M. Donovan, Jr., District Attorney*, Staten Island (*Morrie I. Kleinbart* of counsel), for respondent.

### OPINION OF THE COURT

RIVERA, J.

On the instant appeal, we consider whether the injuries inflicted by the defendant on his ex-girlfriend, the mother of his then four-year-old son, constitute "physical injury" for purposes of the Sex Offender Registration Act (hereinafter SORA). For the reasons that follow, we conclude that the defendant did, in fact, inflict "physical injury" as that term is defined under the Sex Offender Registration Act: Risk Assessment Guidelines and Commentary. Accordingly, the Supreme Court properly assessed 15 points under risk factor 1 for "Use of Violence—Inflicted physical injury" and correctly designated the defendant a level two sex offender pursuant to Correction Law article 6-C.

## I. Factual and Procedural Background

### 1. The Rapes

On Saturday, October 29, 1994, the defendant raped his ex-girlfriend, the mother of his then four-year-old son (hereinafter the victim). On that date, the defendant and the victim were no longer together. In fact, each of them was married to another person. The victim did not report this incident to the police.

One week later, on November 5, 1994, the defendant again appeared at the victim's residence in Sacramento, California. The victim had just exited the bathroom, wearing only a slip. According to the victim, she "wasn't afraid that he was going to do it again because when he called to apologize he stated that he promised that he would never hurt me again" and that "[a]ll he wanted to do [wa]s see his son and give [the victim] money." Inside of the victim's apartment, the defendant stated that he wanted to "get back together" with her.

The defendant followed the victim to the living room and began to act in a "real aggressive" manner. He "grabbed" her and gave her "a big bear hug." When the victim broke free, she and the defendant began fighting. The victim managed to run into the kitchen, grab a "very large butcher knife," and come toward him. The defendant then grabbed the victim's wrist and

twisted it, forcing her to her knees. The defendant took the knife away from the victim and threw it by the front door.

At this point, the victim continued "fighting and wrestling" with the defendant and started throwing things at him, including the kitchen chairs. The defendant grabbed the victim and threw her down on the floor. During the struggle, the victim's slip "pulled up" and the defendant positioned the victim on her stomach. He then laid on top of her and inserted his penis inside her vagina.

During the "whole time," the victim yelled "Chris get off of me," "somebody help me," "no," and "stop." The victim "broke away" from the defendant and ran. As she reached her son's room, the defendant grabbed her again. The two "wrestled around" on the floor. The victim threw toys at the defendant, grabbing the vacuum cleaner and "anything" within her reach "to hit him."

The defendant "pinned" the victim down and began "kissing or licking" her breasts. He then inserted his penis inside her vagina. She continued to fight with him and again managed to break free.

Again, the defendant threw her down on the floor and "tried to put his penis back inside [her] vagina." However, the victim pressed her "legs together." As the victim continued to scream, the defendant slapped her twice, once on the mouth and once on her left cheek. At one point, he placed his hand over her mouth and directed her to "be quiet."

The defendant then "dragged" the victim "by [her] feet" into the master bedroom, and threw her onto the bed "face down into the pillow because [she] was screaming so much." He rolled her over and again inserted his penis inside of her vagina. "[A]ll of a sudden," the defendant "just got off" at which time the victim dialed 911, the police emergency telephone number. Thereafter, the defendant left the victim's residence.

## 2. The Victim's Injuries

According to a County Sheriff's report, among other injuries, the victim sustained a cut inside her mouth, caused by the defendant's slap. The victim had red abrasion marks around both wrists. She had numerous abrasions and scrape marks on her back. One red mark had broken the skin and was approximately four to five inches long. Her knees were red, which was possibly from carpet burn.

In addition, a medical report generated following an examination of the victim showed that the victim sustained: "several

reddish bruises" inside her upper arms; a four centimeter linear scratch to the right cheek; a bruise and "small abrasion" to the right lip; bruises to both forearms; a one centimeter bruise to her right mid thigh; and scratches to the back, including a 10 centimeter scratch. Significantly, the victim also sustained a two to three millimeter "abrasion" in her vaginal area. Moreover, the victim reported to the police that she experienced "some pain" when the defendant inserted his penis inside her vagina.

### 3. The Charges and Conviction

By Sacramento County information No. 95F03952, the defendant was charged with rape (four counts), assault to commit rape/mayhem, bribery (two counts), and attempt to "prevent and dissuade" the victim from "causing a complaint" to be prosecuted.

The defendant pleaded "nolo contendere" to assault to commit rape/mayhem (two counts) (Cal Penal Code § 220 [b]), a felony, with elements equivalent to New York's attempted rape in the first degree (Penal Law §§ 110.00, 130.35 [1]), in satisfaction of the information. He was sentenced to one year of home detention and five years' probation.

The defendant registered as a sex offender in California in May 1997. In September 2000, while on probation in California, he failed to reregister as a sex offender. He was charged with failing to register. That charge, however, was dismissed. In June 2001, the defendant relocated to New Jersey where he was convicted of failure to register as a sex offender and was fined. In April 2004, he was indicted in New Jersey for failure to register as a sex offender. No information was available regarding that indictment. In November 2006, the defendant moved to Richmond County, New York and registered as a sex offender.

### 4. The Risk Assessment Instruments

The Board of Examiners of Sex Offenders (hereinafter the Board) prepared a risk assessment instrument and assessed a total of 80 points, which presumptively placed the defendant in a risk level two category. As relevant to the instant appeal, under risk factor 1 "Use of Violence," 10 points may be assessed if the sex offender used forcible compulsion; 15 points may be assessed if the sex offender inflicted physical injury; and 30 points may be assessed if the sex offender was armed with a dangerous instrument. Here, the Board assessed only 10 points under risk factor 1 "Use of Violence—Used forcible compulsion."

Thereafter, the People submitted a risk assessment instrument wherein they assessed 15 points under risk factor 1 for "Use of Violence—Inflicted physical injury." In all other respects, the People assessed the same points previously scored by the Board. In total, the risk assessment instrument prepared by the People assessed a total risk factor score of 85, which again presumptively placed the defendant in a risk level two category.

### 5. The SORA Hearing

Prior to the SORA hearing, the People advised the court that they were no longer requesting an assessment of 10 points under risk factor 12 "Acceptance of Responsibility." The People, however, were still recommending the assessment of the remaining points, totaling 75, which presumptively placed the defendant in a risk level two category.

At the SORA hearing, the People requested that the court assess 15 points for inflicting physical injury. In this regard, the People argued that "[b]ased on the documents provided from California, the victim suffered bruising and swelling to the face and body at the hands of the defendant." Accordingly, the People asked the court to designate the defendant a level two sex offender.

In response, defense counsel argued:

"The board of examiners reviewed the same documents which the court, People and I have. The board of examiners did not recommend that the court assess points for injuries, the injuries that I saw set forth allegedly from bruising and swelling.

"While we were applying New York Law to that, I would ask you to accept the board's recommendation and the board [sic] in terms of physical injury recommended ten points.

"I would submit, Your Honor, that limited mention of bruising and swelling which I say does not rise to the level of physical injury as I believe stated in the guidelines. In fact, the initial reports from the state of California make no mention of bruising or swelling. It's not so much further on in the report that there's any mention of any allegation of any kind of injury.

"It's my opinion, Your Honor, that the court [sic] of

examiners in drawing up guidelines, physical injury can mean more serious injury.

"I ask the court to assess my client at seventy points, Risk Level one."

The court noted that the "only points" in dispute were the 15 points assessed by the People under risk factor 1, "Use of Violence—Inflicted physical injury." The remaining 60 points were not disputed. The court stated that there was "clear and convincing evidence" in the documents from California to support those sixty points."

With regard to the 15 points relating to risk factor 1, "Use of Violence—Inflicted physical injury," the court stated:

> "I have reviewed all of the documents from California and they are voluminous. There are police reports indicating that the victim suffered quote, small cut in her mouth where the suspect slapped her causing her to cut the inside on the lip from teeth [sic]. They also stated back was sore. Felt it had been scraped or scratched with—either with hands or a rug burn. The victim had some red abrasion marks around both wrists, small cut on the inside of her right lower lip. She had numerous abrasions. Scrapes. Scrape marks on her back. One red mark had broken the skin approximately four to five inches long. Another small carpet burn marks [sic] on the back. Knees red possibly from carpet burn. I find clear and convincing evidence in the police reports that the victim suffered physical injury."

Consistent therewith, the defendant was designated a level two sex offender.

## II. Legal Analysis

### 1. The Parties' Contentions

On appeal, the defendant argues that the Supreme Court improperly assessed points under risk factor 1 for inflicting physical injury. He asserts that the injuries were "not substantial" and that there was no evidence that the victim suffered "a lot of pain."

In response, the People contend that the defendant inflicted physical injury upon the victim. They assert that "the injuries [the victim] suffered were far more than the mere petty slaps or shoves delivered out of meanness or hostility."

## 2. Physical Injury

The SORA Guidelines relating to risk factor 1 provide, in relevant part, as follows:

> "Research on sex offenders shows that an offender's use of violence is positively correlated with his likelihood of reoffending (Quinsey et al. 1995; Limandri & Sheridan 1995; Rice et al. 1991). It is, of course, also a factor strongly associated with how dangerous an offender is to the community. A sex offender who rapes at knifepoint or inflicts physical injury to the victim poses a far greater threat to public safety than one who rubs himself against another on a crowded subway (see, p.2, n.2, supra). The guidelines reflect this fact by assessing an offender 30 points if he was armed with a dangerous instrument; 15 points if he inflicted physical injury; and 10 points if he used forcible compulsion. There is an override if the offender caused serious physical injury or death, so that he is presumptively level 3. See infra p. 17.
>
> "To avoid ambiguity, the guidelines use terms that are defined in the Penal Law. . . .
>
> "Physical injury means 'impairment of physical condition or substantial pain.' (Penal Law § 10.00 [9]). It does not include petty slaps, shoves, kicks and the like. ([S]ee, e.g., Matter of Philip A., 49 N.Y.2d 198 [1980] [two punches to the face causing red marks, crying, and unspecified degree of pain was insufficient to prove physical injury]; People v. Tabachnik, 131 A.D.2d 611 [2d Dept., 1987] [testimony about 'very sore' upper thigh did not establish physical injury])." (Sex Offender Registration Act: Risk Assessment Guidelines and Commentary, at 7-8 [2006].)

In the instant case, the proof presented at the SORA hearing was sufficient to establish that the victim sustained a "[p]hysical injury" within the meaning of Penal Law § 10.00 (9) and the SORA Guidelines and Commentary (see e.g. People v Greene, 70 NY2d 860, 862 [1987] [the victim was kicked in the ribs, cut over the eye and on the hand with a knife, and had "terrible pains"]; Matter of Ashley M., 35 AD3d 612, 613 [2006] [victim's testimony established that he was punched in the face, which caused him to bite down and sustain a one-half-inch laceration to his tongue resulting in swelling and "stinging pain" which the emergency room record denominated as pain level "5" and

a contusion of the left thumb which remained painful and swollen with a restricted range of motion for several days]).

The violation of the victim's body during the course of the violent acts and the injuries inflicted by this defendant caused the victim to suffer "substantial pain." This conclusion is unequivocally supported by the facts. In *People v Chiddick* (8 NY3d 445, 447 [2007]), the Court of Appeals clarified that while the "substantial pain" portion of the definition of physical injury requires "more than slight or trivial pain," the pain "need not . . . be severe or intense to be substantial." We are cognizant that *Chiddick* did not involve a rape, nor did it address SORA. Nevertheless, the instructive analysis and conclusions reached by the Court of Appeals in *Chiddick* are properly applicable to this case. In this regard, in *Chiddick,* the Court of Appeals stated that "there are several factual aspects of a case that can be examined to decide whether enough pain was shown to support a finding of substantiality" (*id.*). Among other factors, the Court of Appeals indicated that the motive of the offender was a relevant consideration "because an offender more interested in displaying hostility than in inflicting pain will often not inflict much of it" (*id.* at 448). Here, the defendant was not interested in simply displaying hostility. Instead, the defendant used force. His motive, as evidenced by his assaultive conduct, was to overcome the victim's resistance and to perpetrate the violation of her body.

This Court is not persuaded by the defendant's attempts to minimize the injuries sustained by the victim. His characterization of the injuries as mere "petty slaps," bruises and scrapes, defies human experience. They were inflicted by him during the course of a brutal rape, wherein the victim desperately tried to fend him off. Indeed, in addition to the multiple scratches, bruises, and abrasions which the victim sustained throughout her body, the rapes caused her to suffer injury to her vaginal area, a fact which the defendant neglects to mention in his brief on appeal. Thus, the 15-point assessment under risk factor 1 for "Use of Violence—Inflicted physical injury" was entirely proper.

The defendant's remaining contention is without merit.

Accordingly, we affirm the order appealed from.

MASTRO, J.P., COVELLO and LEVENTHAL, JJ., concur.

Ordered that the order is affirmed, without costs or disbursements.