OPINION OF THE COURT
Wesley, J.
In this case we are called upon to decide whether an individual’s teeth can constitute a “dangerous instrument” within the meaning of Penal Law § 10.00 (13). While the use of an object to produce injury is an appropriate analytical vehicle to determine whether an object is dangerous, the statute’s ordinary meaning, its legislative history and our jurisprudence persuade us that an individual’s body part does not constitute an instrument under the statute. We therefore reverse the order of the Appellate Division.
Defendant Maxwell Owusu is charged in a 13-count indictment with burglary in the first degree (Penal Law § 140.30 [3] [use or threatened use of a dangerous instrument during the burglary of a dwelling]); four counts of burglary in the second degree (Penal Law § 140.25 [1] [b] [causing physical injury during burglary]; § 140.25 [1] [c] [use or threatened use of a dangerous instrument during burglary]; § 140.25 [2] [burglary of a dwelling]); assault in the first degree (Penal Law § 120.10 *400 [1] [causing serious physical injury with a dangerous instrument]); two counts of assault in the second degree (Penal Law § 120.05 [1] [intentionally causing serious physical injury]; § 120.05 [2] [intentionally causing physical injury with a dangerous instrument]); and two counts of assault in the third degree (Penal Law § 120.00 [1] [intentionally causing physical injury]; § 120.00 [3] [injury with a dangerous instrument through criminal negligence]). Four counts of the indictment contain the aggravating factor that defendant used or threatened to use a dangerous instrument.
These charges stem from an incident in which defendant forced his way into his estranged wife’s apartment and became embroiled in a fight with another man. During the fight, defendant bit the victim’s finger so severely that nerves were severed.
Supreme Court dismissed three of the counts (burglary first [dangerous weapon used or threatened in a dwelling], assault first [intentional serious physical injury caused by a dangerous instrument] and assault second [physical injury caused by a dangerous instrument]), and reduced one count of burglary second (threat or use of a dangerous instrument) to burglary third. The court reasoned that defendant’s teeth could not constitute a dangerous instrument. The Appellate Division, with one Justice dissenting, reversed. Citing People v Carter (53 NY2d 113), the Appellate Division applied a “use-oriented approach” and determined that teeth can. be a dangerous instrument (248 AD2d 491, 492). A Judge of this Court granted defendant leave to appeal.
In People v Carter (53 NY2d 113, supra), we stated that “ ‘any instrument, article or substance,’ no matter how innocuous it may appear to be when used for its legitimate purpose, becomes a dangerous instrument when it is used in a manner which renders it readily capable of causing serious physical injury” (id., at 116 [internal citations omitted] [emphasis in original]). The People point to Carter and the recodification of the Penal Law in 1967 as clear indications that the meaning of “dangerous instrument” should be subject to case-by-case functional inquiries into the use of instruments, articles or substances (see, Penal Law § 10.00 [13]).[1]
It is readily apparent, and the People do not argue to the contrary, that a part of one’s body is not encompassed by the *401 terms “article” or “substance” as used in the statute. But what of the term “instrument?” The starting point of statutory interpretation is, of course, plain meaning (Council of City of N. Y. v Giuliani, 93 NY2d 60, 68-69). In our view, the plain meaning of instrument in this context is a device or object which is capable of causing harm as defined by the statute. One’s hands, teeth and other body parts are not, in common parlance, “instruments.”
The Penal Law and our jurisprudence have long recognized that how an object is used determines if it is “dangerous.” Neither the Legislature nor the courts, however, have classified a person’s hands, teeth or other body part as a weapon or instrument. Contrary to the People’s position, the definition of a dangerous weapon under former law parallels the current definition of a dangerous instrument. The prior statute included any “other instrument or thing likely to produce grievous bodily harm” (former Penal Law § 242 [4]; see also, former Penal Law § 1897). The 1937 Law Revision Commission Report noted that killing “with bare fists cannot be said to be effecting death with a ‘dangerous weapon,’ and * * * a fatal shooting * * * may be termed killing with a ‘dangerous weapon’ as a matter of law” (1937 Report of NY Law Rev Commn, at 728). The Commission noted that “[b]eyond this statement there is no absolute certainty,” but the extreme positions, at least, were considered well defined (id.).
In working on the recodification of the Penal Law, the State Commission Revision of the Penal Law and Criminal Code noted that the proposed “dangerous instrument” provision was meant to “includ[e] assaults committed with knives, crowbars, etc., as well as those committed with firearms, blackjacks, metal knuckles, etc. [i.e., the enumerated devices]” (Commission Staff Comments on Changes in the New Penal Law since the 1964 Study Bill, McKinney’s Revised Penal Law Special Pamphlet, at 272, reprinted in 1969 Gilbert Criminal Law and Practice, at ID-15). There is no indication that the purpose was to expand the definition of dangerous instrument, as it was then understood, to include the human body itself, and indeed the specific reference to obviously dangerous objects such as “knives” and “crowbars” suggests that such an expansive reading was not at all intended. Thus, our analysis is not premised on placing an exclusion in the statute’s defini *402 tion; rather, it is founded on the well-documented legislative history that a body part was never considered a dangerous weapon or instrument.
A recent amendment to the second degree assault statute signals that the Legislature has not embraced the all encompassing interpretation of the statute offered by the People. The amended section imposes criminal liability on an adult for intentionally causing physical injury to a child under seven (Penal Law § 120.05 [9]).[2] If a body part such as a hand were within the sweep of the Penal Law definition of a dangerous instrument, however, there would have been no need for the legislation. A jury would be free to conclude that, under the “use-oriented” approach, an adult’s hands could constitute a dangerous instrument when used against a child for assault in the second degree (intentionally causing physical injury with a dangerous instrument [Penal Law § 120.05 (2)]). Because the Legislature did not consider hands or other body parts to constitute dangerous instruments, the new provision was necessary.[3]
The proper statutory interpretation can only be reached upon careful objective historical and structural analysis. In light of this long history, reflected in both the 1937 and 1964 Staff Comments of the Law Revision Commission and the State Commission on Revision of the Penal Law and Criminal Code, the best evidence suggests that the Legislature always intended that the “dangerous instrument” concept be limited to external objects.
Our jurisprudence also reflects that, although the Penal Law invoked criminal liability for innocuous objects capable of causing physical harm, a person’s body was never considered to fall within the statute’s scope. In People v Adamkiewicz (298 NY 176), this Court assessed whether a particular item was dangerous in terms of its use in a given circumstance. There, the Court was construing Penal Law § 1897 (carrying and use *403 of dangerous weapon). The statute set forth two categories of “dangerous weapon [s]”: one, an itemized list of objects, and the second enumerating various types of items as well as “any other dangerous or deadly instrument, or weapon.” The Court held that the second category was broad enough to include an ice pick “because of its obviously inherent dangerous and lethal character” (id., at 178).
The following year, in People v Vollmer (299 NY 347), this Court held that the defendant could not be found to have used a dangerous instrument under the first degree manslaughter statute when he beat a man to death with his bare hands, because “[w]hen the Legislature talks of a ‘dangerous weapon’, it means something quite different from the bare fist of an ordinary man” (id., at 350, citing 1937 Report of NY Law Rev Commn, at 731; also citing, People v Adamkiewicz, supra, and other cases). The People would have us ignore Vollmer (and the historical development of the dangerous instrument concept) on the basis that the 1967 revision of the Penal Law greatly expanded the dangerous instrument concept. As indicated, however, that is simply not the case.
Nor can the argument be made that by the “ordinary man” language in Vollmer the Court meant to leave the door open to the possibility that the hands of a boxer or martial arts expert could constitute dangerous instruments (see, dissenting opn, at 411). This would create an interesting anomaly itself, insofar as the defendant in Vollmer beat the victim to death with his “ordinary” hands. An “extraordinary man” rule would create increased criminal liability for use of a dangerous instrument where a heavyweight champion merely threatens a blow (see, Penal Law § 10.00 [13] [definition of dangerous instrument includes use or “threatened” use]), but not where an ordinary man beats another to death. Vollmer sensibly avoided such a strained interpretation by concluding fists are not dangerous instruments. This conclusion was reached not because the defendant’s fists, as utilized under those circumstances, were not readily capable of causing death (they in fact did), but because they were simply his hands, nothing more.
In every case where this Court has been called upon to decide whether something constitutes a dangerous instrument, the focus has been on an object. In People v Galvin (65 NY2d 761), for example, the defendant grasped the victim’s head and smashed it into a sidewalk, causing severe injuries. The Court held that the sidewalk constituted the dangerous instrument (see also, People v Curtis, 89 NY2d 1003 [belt wrapped around *404 defendant’s fist]; People v Vasquez, 88 NY2d 561 [wadded-up paper towel stuffed in victim’s mouth]; People v Cwikla, 46 NY2d 434 [handkerchief used to gag an elderly victim, choking her to death]). Thus, our “use-oriented approach” has always been directed at understanding if an instrument is (or can be) “dangerous”; it has not been used as a guide to determine if the means by which the victim was injured was an “instrument”.
To be sure, defendant is charged with causing serious physical injury to his victim under one second degree assault count of the indictment (Penal Law § 120.05 [1]), one of many charges obviously unaffected by our decision here. However, another count of the indictment charging assault in the second degree (Penal Law § 120.05 [2]) is not correlated to the severity of the victim’s injury, but to its cause — the use of a dangerous instrument. To allow criminal liability to be enhanced solely on the potential for serious physical injury in an assault that does not involve an object even when only physical injury need be shown (Penal Law § 120.05 [2]) blurs the statutory gradations of liability for assaults and effectively repeals subdivision (1) of Penal Law § 120.00 (assault in the third degree — intentionally causing physical injury).
If a person is capable of producing a serious physical injury and does so, his criminal liability should be measured by the result (the injury), not the potential to do so. To hold otherwise would introduce a potentially confusing array of “relevant” evidence in proving liability under Penal Law § 120.05 (2) since a dangerous instrument is defined by its ability to produce a serious physical injury or death in the circumstances in which it is used or threatened, or attempted to be used (Penal Law § 10.00 [13]). Thus, the size of the perpetrator, his weight, strength, etc., as well as any infirmities or frailties of the victim would all be relevant in understanding one’s ability to cause serious physical injury or death. A sliding scale of criminal liability (the extraordinary man anomaly) would be the result. While some of the same potential exists in cases involving foreign objects, that decision was made long ago by the Legislature. Our jurisprudence has drawn the line at a reasonable interpretation of the term “instrument” and has not included within it a person’s hands or other body parts.
The People’s position also creates mischief with the burglary statute where, as in this indictment, the aggravating factor is the use or threatened use of a dangerous instrument without the necessity of any injury (compare, Penal Law § 140.25 [1] *405 [c]; § 140.30 [3]; see, State v Frey, 178 Wis 2d 729, 742, 505 NW2d 786, 791 [holding that defendant’s bare hands did not constitute a “dangerous weapon * * * or instrumentality,” in part because “[allowing the jury to consider body parts as dangerous instruments confuses the essential elements of several crimes”]). Under the People’s understanding of both the statute and our prior jurisprudence, any person of substantial size or physical strength faces significantly enhanced criminal liability with the mere threat of a blow, or a bite. Would the People seriously endorse the prospect of indicting Mr. Owusu for baring his teeth during a burglary?[4]
Increased criminal liability arises from the use or threatened use of a dangerous instrument because the actor has upped the ante by employing a device to assist in the criminal endeavor (see, Commonwealth v Davis, 10 Mass App 190, 196-197, 406 NE2d 417, 421-422 [holding that teeth cannot constitute “dangerous weapon”]). Mr. Owusu’s teeth came with him. In our view, that alone should not expose him to criminal liability beyond that measured by the extent of his victim’s injury, and Supreme Court properly dismissed or reduced those counts of the indictment predicated upon defendant’s use of a dangerous instrument (see generally, Annotation, Parts of Human Body as Dangerous Weapons, 8 ALR4th 1268, 1269 [noting that “the main line of authority * * * is to the effect that in no circumstances can fists or teeth be found to constitute deadly or dangerous weapons”]; Commonwealth v Davis, supra, 10 Mass App, at 194, 406 NE2d, at 420 [noting that “(t)he clear weight of authority is to the effect that bodily parts alone cannot constitute a dangerous weapon”]).
The dissent premises its disagreement on a foundation of five concerns; none are up to the test. The dissent’s troublement regarding our alleged statutory misconstruction is founded upon a fundamental misconception. We do not reject the principle that the words of statutes are the primary indicia of their meaning; we simply do not accept the dissenter’s view of the plain meaning of the term “instrument.” The “plain” words of the statute have consistently been understood by this Court (and the courts of many other States) and the Legislature to mean that an instrument is not one’s arm, hand, teeth, elbow or any other body part.
*406 Our decision does not plow new ground — the interpretation and application of the statute is firmly rooted both in the efforts of the Legislature and in our jurisprudence. Indeed, the dissenter concedes that in 1949 this Court unanimously ruled that a man’s hands — even though they killed another — were not dangerous instruments. Did the Vollmer Court overlook this purported long-standing, “all encompassing meaning?” We think not. The Court then (and now) did not engage in judicial legislation, it simply tried to make sense of a statutory term whose meaning was the focus of the case. The Court looked to its precedents and the legislative history of the statute, as we have done. To now change the statute’s sweep will unsettle the careful statutory scheme of increased criminal liability arising from the use, or threatened use, of a dangerous instrument, and will result in applications that are without common sense.
Accordingly, the order of the Appellate Division should be reversed and the order of Supreme Court reinstated.

. Penal Law § 10.00 (13) provides: “ ‘Dangerous instrument’ means any instrument, article or substance * * * which, under the circumstances in *401 which it is used, attempted to be used or threatened to be used, is readily capable of causing death or serious physical injury.”

. In 1990, the Legislature added a new subdivision (8) to the second degree assault statute (Penal Law § 120.05 [8]; L 1990, ch 477, § 2). This new crime requires that the adult must intend to cause physical injury to the child and recklessly cause serious physical injury (id.). The section was enacted in “recognition] that an adult’s hand/fist may, when used against a child, be the fair equivalent of a weapon” (Donnino, Practice Commentary, McKinney’s Cons Laws of NY, Book 39, Penal Law art 120, at 136).

. In People v Johnson (122 AD2d 341), a case involving an assault on a child by an adult, the Appellate Division reversed a conviction for second degree assault when the jury was asked to determine if defendant’s hands were a dangerous instrument under a use-oriented approach.

. The Penal Law is replete with crimes where the degree of culpability is enhanced by the use, threatened use or display of a dangerous instrument (see, e.g., Penal Law § 120.14 [1] [menacing in the second degree]; § 160.15 [3] [robbery in the first degree]).