OPINION OF THE COURT
Richard C. Moriarty, Sr., J.
The defendant, Irene Marr, was charged on August 21, 2000, *281 with failure to yield the right-of-way at a stop sign in violation of section 1142 (a) of the Vehicle and Traffic Law. At the conclusion of the People’s case, the defendant moved for a trial order of dismissal upon the ground that the trial evidence was not legally sufficient to establish the offense charged. The court initially denied the motion. The defendant then proceeded to present factual evidence in defense. At the close of evidence the court was prepared to render a decision, but upon the request of the defendant to reconsider its decision on the motion pending the submission of a written argument, agreed to reserve its decision. Now, for the reasons cited below and based solely on evidence the court would have been authorized to consider upon the motion had the court not reserved decision, the court denies the defendant’s motion to dismiss, and based upon the facts adduced at trial, prior to and subsequent to the motion to dismiss, and the law, the court finds the defendant guilty of violating section 1142 (a) of the Vehicle and Traffic Law.
Facts
Vehicle and Traffic Law § 1142 (a) reads as follows:
“Except when directed to proceed by a police officer, every driver of a vehicle approaching a stop sign shall stop as required by section [1172] and after having stopped shall yield the right of way to any vehicle which has entered the intersection from another highway or which is approaching so closely on said highway as to constitute an immediate hazard during the time when such driver is moving across or within the intersection.”
The simplified traffic information charges the defendant with failure to yield the right-of-way at a stop sign in violation of section 1142 (a) of the Vehicle and Traffic Law. The accompanying supporting deposition alleges “The Defendant did come to the intersection of Tuttle Avenue and South Main Street and Stopped for a Stop Sign. The Defendant Irene Marr then started to enter the intersection and struck a pedestrian riding a bicycle in a northerly direction on South Main Street.”
Joseph C. Bunke testified for the prosecution that he was operating a bicycle northbound on South Main Street in the Village of Horseheads, en route to this job at Elmira Litho. He was proceeding northbound and traveling at about 20 miles per hour as he approached the intersection with Tuttle Avenue by the Post Office. There were no traffic control devices controlling travel in his direction through the intersection. He *282 observed the defendant, Irene Marr, stopped at the stop sign on Tuttle Avenue and he testified that he saw her look in his direction. However, when he was within 20 feet of the intersection, the defendant pulled out to execute a left turn and her vehicle struck Mr. Bunke’s bicycle on the right side. He testified that he bounced off the vehicle and landed in the street.
After cross-examination and redirect examination the People rested.
The defense then made a motion to dismiss, not by disputing the fact that the intersection was controlled by a stop sign, and not by disputing that the defendant failed to yield to Mr. Bunke, but on the basis that section 1142 (a) did not require the defendant to yield to Mr. Bunke, because Mr. Bunke was not operating a vehicle as that term is defined in Vehicle and Traffic Law § 159.
Section 159 defines a vehicle as follows:
“Every device in, upon, or by which any person or property is or may be transported or drawn upon a highway, except devices moved by human power or used exclusively upon stationary rails or tracks.”
It is not disputed that Mr. Bunke was operating a bicycle, which is a device operated by human power, and therefore not a vehicle as defined in section 159. Prior to ruling on the defendant’s motion to dismiss, the court reviewed Vehicle and Traffic Law § 1142 (a); §§ 159 and 1231.
Section 1231 reads as follows:
“Every person riding a bicycle or skating or gliding on in-line skates upon a roadway shall be granted all of the rights and shall be subject to all of the duties applicable to the driver of a vehicle by this title, except as to special regulations in this article and except as to those provisions of this title which by their nature can have no application.”
After this review, the defendant’s motion was denied. Since the defendant did not accept a simple denial of the motion to dismiss, the court explained its position on the record. Mr. Bunke was a bicyclist, and under section 1231 would have been subject to the same duties as the defendant under section 1142 (a), had their positions been reversed. Section 1142 (a) imposes a duty on an operator to yield the right-of-way “to any vehicle which has entered the intersection from another highway or which is approaching so closely on said highway as to constitute an immediate hazard.” By imposing the duty to *283 yield on the driver at the stop sign, the statute grants the vehicle on the other highway that “has entered the intersection” or is so close to the intersection “as to constitute an immediate hazard,” the right to proceed through the intersection, without being struck by a vehicle that has failed to yield the right-of-way. On the facts presented, through section 1231, the bicyclist, Mr. Bunke, had the same rights as a vehicle defined in section 159, including the right to proceed through the intersection without being struck.
At the conclusion of this discussion, the motion to dismiss was denied. The defense then proceeded with testimony of the defendant. She testified that she did stop at the aforesaid stop sign, made her left turn into the southbound lane of South Main Street, “got completely in my lane” and saw the cyclist heading straight, for her. She denied striking the bicyclist, but claimed that in her rearview mirror she saw him turn into Tuttle Avenue towards the Post Office and fall off the bicycle. She further testified that the investigating officer advised her that Mr. Bunke had come from the parking lot across the street from the intersection, not northbound on South Main Street.
The investigating officer, Horseheads Police Officer Jamie K. Burgess, was called to the stand as a rebuttal witness to Ms. Marr. Officer Burgess testified that upon his arrival the bicycle was in the northbound lane of South Main Street, within its intersection with Tuttle Avenue, and that Mr. Bunke was lying on the double yellow lines in the middle of South Main Street. He further testified that upon being interviewed at the scene, Ms. Marr reported that she had stopped for the stop sign, looked both ways, then pulled out to turn left on South Main Street. She told the officer that she did not see Mr. Bunke until after pulling out and “I didn’t see him, I hit him.” Further, Officer Burgess denied telling Ms. Marr that Mr. Bunke came out of the convenience store.
The parties summed up after the close of evidence and the defendant raised a concern that the court was interpreting statutes rather than applying the law as written and requested that the court reserve decision pending the submission of written arguments. Decision was reserved.
Discussion
In his memorandum of law the defendant notes that section 1231 was amended in 1995, and argues that if the Legislature had intended to have section 1142 (a) include bicycles, it would have changed the law at that time. However, a review of the *284 historical statutory notes to McKinney’s indicates in fact that section 1231 was simply “modernized” to include skating or gliding on in-line skates.
The defendant correctly notes that Vehicle and Traffic Law § 1146 covers the present case and suggests that the officer erred by charging section 1142 (a), rather than section 1146.
Section 1146 reads as follows:
“Notwithstanding the provisions of any other law to the contrary, every driver of a vehicle shall exercise due care to avoid colliding with any bicyclist, pedestrian or domestic animal upon any roadway and shall give warning by sounding the horn when necessary.”
Rather than being the “correct charge” in this case, it is a lesser included offense in this case and every other case involving a collision between a vehicle and a bicyclist, a pedestrian, or a domestic animal.
It is not within the province of this court or any other court to “legislate from the Bench.” If the legislative intent is clear from the plain meaning of a statute, courts are constrained to follow that plain meaning, even if a “defendant’s repugnant conduct falls squarely within the intent of a statute.” (People v Maldonado, 273 AD2d 537, 541 [3d Dept 2000].) In Maldonado, the Court held that the restrictive language in Penal Law § 240.32 (aggravated harassment of an employee by an inmate) excluded its application to a defendant who, while in a city lockup, “continuously spit blood and spittle” at police personnel. (People v Maldonado, supra, at 538.) After a review of several related statutes, the Court concluded “his detention in such lockup does not, in and of itself, confer upon him the status of‘inmate’ as that term is defined in Penal Law § 240.32, or any other statute.” (People v Maldonado, supra, at 542.)
However, where a review of a statute raises a question regarding the intent of the Legislature, it is the duty of a court to interpret the law. During this process a court is constrained to follow a sequential order to arrive at its interpretation:
“the plain, unqualified words of the statute;
“the more cogent legislative history, if that source must be used;
“well-settled statutory interpretation precedents that circumscribe judicial activity reserved to the legislative realm;
“practical context and realistic application of the prosecutorial tool;
*285 “and last, but not least, common sense.” (People v Owusu, 93 NY2d 398, 407 [1999] [Bellacosa, J., dissenting].)
Here there are three statutes whose “plain unqualified words” seem contradictory. The plain meaning of section 159 is that Mr. Bunke’s bicycle is not a vehicle. The plain meaning of section 1142 (a) is that Ms. Marr did not have to yield to Mr. Bunke, because Mr. Bunke was not operating a vehicle, but a bicycle. However, the plain meaning of section 1231 is that Mr. Bunke on his bicycle would have to yield to Ms. Marr, were their positions reversed. What is not so plain is whether section 1231 “trumps” section 159 and turns Mr. Bunke and his bicycle into a “vehicle” for the purposes of section 1142 (a). The court’s original ruling, during the course of the trial, was that in fact it did.
Subsequently, the court was unable to find any “cogent legislative history” to assist with this interpretation, nor discern any “well-settled statutory interpretation precedents that circumscribe judicial activity” in this arena, leaving only the interpretive tools of “practical context and realistic application of the prosecutorial tool; and last, but not least, common sense.” The latter two were applied during the course of the trial and there is no reason to change that decision.
Happily for a court at the bottom rung of the judicial ladder, a court two steps up agrees with this analysis. The Appellate Division, Third Department, determined specifically that because of section 1231 a bicyclist is not a pedestrian, but a vehicle subject to the intersection rules for vehicles and that vehicles at intersections must treat bicycles as if they were vehicles. (Redcross v State of New York, 241 AD2d 787 [3d Dept 1997], lv denied 91 NY2d 801 [1997].)
In Redcross (supra), the intersection was controlled by a red light; thus the duty to yield was controlled by section 1111 (a) (1) rather than section 1142 (a). The Court, citing to section 1231, concluded that bicyclists are the equivalent of vehicles for the purposes of the rules of the road and that “a vehicle approaching an intersection must yield the right-of-way to a vehicle (here a bicycle) already in the intersection.” (Redcross v State, supra, at 790-791.) While there were both pedestrian and vehicle signals controlling the bicyclists, the Court held that the bicyclists in question were subject to the traffic control devices at the intersection governing vehicles and specifically held that the bicyclists were not pedestrians subject to “the pedestrian control device in question.” (Redcross v State, supra, at 791.)
*286 Accordingly, based on the facts adduced at trial prior to the motion to dismiss, and the law, the motion to dismiss is denied. Based on the facts adduced at trial, prior to and subsequent to the motion to dismiss, more particularly, the credible testimony of James C. Bunke and Officer Jamie K. Burgess, and the law, the defendant is found guilty of failure to yield the right-of-way in violation of section 1142 (a) of the Vehicle and Traffic Law.