[971 NE2d 363, 948 NYS2d 233]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DAVID
PLUNKETT, Appellant.

Argued April 26, 2012; decided June 7, 2012

## POINTS OF COUNSEL

*Audrey Baron Dunning*, Ilion, for appellant. I. A plea bargain that specifically includes a defendant's right to appeal rulings of the trial court should be recognized and upheld. (*People v Green*, 75 NY2d 902; *People v Taylor*, 65 NY2d 1; *People v Prescott*, 66 NY2d 216.) II. A defendant with mental disabilities should be allowed to question prospective jurors to determine if they hold any unfavorable opinions or views toward people with mental disabilities. III. The lower court erred in categorizing teeth as a dangerous instrument under Penal Law § 10.00 (13). (*People v Owusu*, 93 NY2d 398.) IV. Saliva is not a dangerous instrument as defined under New York criminal law. (*People v Vollmer*, 299

NY 347; *People v Owusu*, 93 NY2d 398.) V. The court erred in not dismissing the indictment upon the People's failure to present potentially exculpatory material to the grand jury and the lack of proper police investigation of all relevant and available witnesses involved, including eyewitnesses. (*People v Valles*, 62 NY2d 36; *People v Calbud, Inc.*, 49 NY2d 389; *People v Johnson*, 277 AD2d 702; *People v Lancaster*, 69 NY2d 20; *People v De Martino*, 71 AD2d 477; *People v McAdoo*, 45 Misc 2d 664; *People v Talham*, 41 AD2d 354.)

*John H. Crandall, District Attorney*, Herkimer (*Jeffrey S. Carpenter* of counsel), for respondent. I. Appellant waived any challenge to the factual finding of guilt by entering a guilty plea, and appellant failed to sufficiently reserve his right to appeal on the record. (*People v Pelchat*, 62 NY2d 97; *People v Thomas*, 74 AD2d 317; *People v Taylor*, 65 NY2d 1; *People v Levin*, 57 NY2d 1008; *People v Charleston*, 54 NY2d 622; *People v Kinchen*, 60 NY2d 772; *People v Davilla*, 249 AD2d 179; *People v Green*, 75 NY2d 902; *People v Di Raffaele*, 55 NY2d 234; *People v Lynn*, 28 NY2d 196.) II. The lower court did not err by refusing to allow questions concerning prospective jurors' views towards persons with mental disabilities. (*People v Corbett*, 68 AD2d 772; *People v Torres*, 268 AD2d 312; *People v Green*, 75 NY2d 902.) III. The lower court did not categorize teeth as a dangerous instrument. (*People v Owusu*, 93 NY2d 398; *People v Carter*, 53 NY2d 113.) IV. The lower court properly considered saliva a dangerous instrument pursuant to Penal Law § 10.00 (13). (*People v Carter*, 53 NY2d 113; *People v Owusu*, 93 NY2d 398; *People v Azor*, 177 Misc 2d 427; *Tischler v Dimenna*, 160 Misc 2d 525; *People v Anonymous*, 153 Misc 2d 436.) V. The lower court did not err in refusing to dismiss the indictment after review of the grand jury minutes. (*People v Jennings*, 69 NY2d 103; *People v Deegan*, 69 NY2d 976; *People v Lancaster*, 69 NY2d 20; *People v Isla*, 96 AD2d 789; *People v Valles*, 62 NY2d 36; *People v Erber*, 210 AD2d 250; *People v Ferrara*, 99 AD2d 257; *People v Crumpler*, 70 AD3d 1396.)

*Lambda Legal Defense and Education Fund, Inc.*, New York City (*Hayley J. Gorenberg* of counsel), and *Lambda Legal Defense and Education Fund, Inc.*, Chicago, Illinois (*Scott A. Schoettes* of counsel), for American Academy of HIV Medicine and others, amici curiae. The lower court erred in ruling that the "dangerous instrument" element was satisfied in this case. (*People v Watson*, 32 AD3d 1199; *People v Woodruff*, 4 AD3d 770; *Brown v New York City Health & Hosps. Corp.*, 225 AD2d

36; *People v Owusu*, 93 NY2d 398; *People v Carter*, 53 NY2d 113; *People v Byrd*, 51 AD3d 267; *Matter of Holloway v Travis*, 289 AD2d 821; *Matter of Andre D.*, 182 AD2d 1108; *People v Travis*, 273 AD2d 544; *Hitchcock Plaza v Clark*, 1 Misc 3d 906[A], 2003 NY Slip Op 51524[U].)

## OPINION OF THE COURT

Chief Judge LIPPMAN.

Defendant challenges his conviction for aggravated assault upon a police officer or a peace officer (Penal Law § 120.11), an element of which is the assailant's use of a deadly weapon or dangerous instrument.[1] He was charged with that offense by a Herkimer County grand jury based on evidence that he bit a police officer on the finger as the officer attempted to arrest him. Defendant is HIV positive and has a long history of psychiatric illness. His arrest was precipitated by his bizarre behavior and open possession of marijuana in the reception area of his primary physician's office.

Although the indictment, in its top count,[2] does little more than track the language of Penal Law § 120.11, the People in their bill of particulars specified that the dangerous instrument(s) to which the indictment referred were defendant's teeth. However, in a prior biting case, *People v Owusu* (93 NY2d 398 [1999]), this Court had held that an assailant's teeth could not be deemed "instruments" within the definition of the Penal Law; indeed, *Owusu* held categorically that "an individual's body part does not constitute an *instrument*" and may not, even if used dangerously to produce injury, be a "dangerous instrument" within the meaning of Penal Law § 10.00 (13) (*id.* at 399). Following her receipt of the People's bill of particulars, then, defendant's attorney moved by letter application to append to her client's previously denied omnibus motion an application based upon *Owusu*. She included with her letter a copy of that decision, noting her view that it bore directly upon

---

1. The statute provides in its entirety:

    "A person is guilty of aggravated assault upon a police officer or a peace officer when, with intent to cause serious physical injury to a person whom he knows or reasonably should know to be a police officer or a peace officer engaged in the course of performing his official duties, he causes such injury by means of a deadly weapon or dangerous instrument."

2. In connection with the doctor's office incident, defendant was also charged with two counts of assault in the second degree, resisting arrest and criminal possession of marijuana in the fifth degree.

the viability of the indictment's first count. She said, "this case speaks to the issue of teeth as a potentially deadly weapon or dangerous instrument. This case held that 'human body parts such as appellant's teeth could not constitute a dangerous weapon . . . .' " Counsel requested on this purely legal ground the first count's dismissal.

County Court, recognizing that this was not a routine omnibus application, responded to it both orally and in a separate written decision. Implicitly acknowledging that a prosecution premised on the use of teeth as dangerous instruments was not viable after *Owusu,* the court expressed the view that the aggravated assault count could be sustained instead on the theory that the dangerous instrument to which the count referred was defendant's saliva. Defendant's saliva "infected with the AIDS virus," the court believed, was a substance "readily capable of causing death or other serious physical injury"[3] and, as such, qualified as a dangerous instrument for purposes of the aggravated assault statute. Defendant's teeth, the court explained, were only the means for injecting the dangerous substance into the victim's body.

Just before the trial's scheduled commencement, County Court announced that based on "continuing discussions" an agreement had been reached that defendant would plead guilty to the indictment's top three counts. After advising defendant of the rights he would be waiving by entering the contemplated plea, and of the bargained for sentence, the court separately noted:

> "Based upon discussions, you would not be waiving your right to appeal, and you would have your right to appeal, which is one of the things that you had requested as part of your plea. And the Court, *based upon certain circumstances that have come up in rulings that I have made,* that, in fact, you would have your right to appeal continue" (emphasis supplied).

It is clear that County Court was here referring specifically to its ruling that defendant's saliva could qualify under the Penal

---

**3.** Whether saliva containing the HIV virus is in fact "readily capable of causing death or other serious physical injury" is an issue that we do not reach. For the reasons that follow, neither should it have been reached by County Court.

Law as a dangerous instrument. The court understood the ruling to be pivotal to the prosecution,[4] and the record discloses no other issue whose reservation could conceivably have been instrumental in inducing defendant's plea to the indictment's top three counts. Defendant's counsel, moreover, plainly believed that her client possessed a meritorious claim completely decisive of the indictment's most serious charge. Her insistence upon the reservation of that claim, then, would have been a representational imperative.

Defendant's reservation of appellate rights did not, however, avail him at the Appellate Division, where the judgment convicting him was affirmed on the ground that his appellate claims had been forfeited by his plea (77 AD3d 1442 [2010]). A Judge of this Court granted defendant permission to appeal (16 NY3d 835 [2011]), and we now modify to vacate defendant's conviction for aggravated assault and to dismiss the corresponding count of the indictment.

■ A guilty plea, we have observed, "generally marks the end of a criminal case, not a gateway to further litigation" (*People v Hansen*, 95 NY2d 227, 230 [2000]). Consistently, we have deemed appellate claims challenging what is competently and independently established by a plea forfeited (*see id.*), even where the plea was induced and entered upon an assurance that such claims would survive. In *People v Thomas* (53 NY2d 338, 340 [1981]) we held that

> "[t]he legal sufficiency of a conceded set of facts to support a judgment of conviction entered upon a guilty plea may not be saved for appellate review by conditioning the plea on defendant's right to appeal that issue, even though the prosecutor consents to, and the Trial Judge approves, the entry of such a conditional plea."

We explained that it would be logically inconsistent to permit a defendant to enter a plea of guilty based on particular admitted

---

**4.** As the court explained to the jury shortly after taking defendant's plea: "the question was whether—there's some very technical legal questions that have been batted around in this case as to what would involve a dangerous instrument, which is something you would have had to have made a decision on. *And I had made a ruling that you were going to hear it based on the fact that one of the definitions of dangerous instrument is a term called 'substance,' and that his saliva was, in fact, a substance that could have caused death*; and that when he bit the officers, he was only using his teeth to inject a substance into their body" (emphasis supplied).

facts, yet to allow that defendant contemporaneously to reserve the right to challenge on appeal the sufficiency of those facts to support a conviction, had there been a trial (*see id.* at 344). The "solemn act" of entering a plea, itself sufficing as a conviction, we said, should not be permitted to be used as a device for a defendant to avoid a trial while maintaining a claim of factual innocence (*see id.* at 344-345).

By the same token, however, where an appellate claim does not challenge what is legitimately established by a plea or where it has been deemed inconsistent with public policy to submerge an appellate claim within a plea, we have recognized that the forfeiture doctrine should not apply. As we noted in *People v Lee* (58 NY2d 491 [1983])—where we held appellate claims as to the constitutionality of a penal statute not encompassed by the plea forfeiture doctrine—*Thomas*'s application of the doctrine was expressly limited to situations in which the issue proposed for appellate review was the sufficiency of the facts admitted in connection with the plea to support the conviction (*see Lee*, 58 NY2d at 494 n, citing *Thomas*, 53 NY2d at 344); *Thomas* was in no way inconsistent with the limiting principle recognized in *Lee*, that where an appellate claim is not inconsistent with what is properly established by the plea, it is not forfeited (*see id.* at 493-494; *see also People v Taylor*, 65 NY2d 1, 5 [1985] ["since a plea usually removes the issue of factual guilt from a case, resolution of the question (of what is forfeited by the plea) may be guided by determining whether the claim relates to the factual elements of the crime charged, or to some other, fundamental matter"]). Of course, that principle was not novel in *Lee* (*see e.g., Menna v New York*, 423 US 61, 63 n 2 [1975] ["A guilty plea . . . simply renders irrelevant those constitutional violations not logically inconsistent with the valid establishment of factual guilt and which do not stand in the way of conviction, if factual guilt is validly established"]).

If the question reserved for appeal in this case were whether there was evidence to make out the crime of aggravated assault, the reservation would, under *Thomas*, be ineffective; the undisturbed plea would operate to forfeit the appellate claim. Somewhat paradoxically, however, such a plea, although effective to the extent of the forfeiture, would be subject to vacatur by reason of having been induced by a promise of appellate review the performance of which *Thomas* forbids (*see* 53 NY2d at 344; *and see People v Di Raffaele*, 55 NY2d 234, 241 [1982]). In the event we find his *Owusu* based challenge to his conviction forfeited by his plea, defendant has asked for, and would be

entitled to have, his plea back. Defendant's *Owusu* claim would then be litigated in the context of the reinstituted prosecution through a trial and any ensuing appeals—hardly a victory for the principle that a plea should function as a bulwark against further litigation.

We do not believe that the interposition of so many steps should be required to resolve the particular very basic, purely legal question defendant has raised, namely, whether he has been charged with and has pleaded to a cognizable offense, where the accusatory instrument, as refined by the People's bill of particulars and the trial court's ruling, alleges the commission of aggravated assault by use of part of the defendant's person as a dangerous instrument. The address of that question depends not at all on the particular evidence supporting the accusation, nor is it logically precluded by defendant's admissions in his plea to the extent that those admissions are understood as responsive to the charge framed by County Court's ruling. This is because the relevant claim is that there is no set of facts that could be proved, or to which a defendant could plead, that would establish guilt of aggravated assault upon the theory alleged. A plea of course has extraordinary utility; it is uniquely capable of establishing inculpatory facts, even when those facts have not otherwise been satisfactorily adduced. It is, however, not a competent proxy for a legally (as opposed to a factually) viable theory of prosecution. A defendant can admit facts, but cannot by his or her admission mint an offense for which the law does not already provide.

In the present unusual circumstance, where the claim defendant would raise is essentially that he was never charged, under the indictment's top count, with an extant crime, the rationale for the forfeiture doctrine—namely, that what the defendant would challenge has been conclusively and independently established by his or her plea—is not applicable to bar review. To so hold does not impair the legitimate utility of pleas in concluding litigation. And, we signal no departure from the rule that, ordinarily, guilty pleas operate to forfeit appellate claims respecting nonjurisdictional defects in the underlying proceedings (*see People v Konieczny*, 2 NY3d 569, 572 [2004]). We simply recognize, as we have in numerous other contexts (*see Hansen*, 95 NY2d at 230-231), that pleas are not properly interposed to preclude appellate review of issues that they are not competent to, or for reasons of public policy should not, conclude.

██ Inasmuch as defendant's plea does not operate to forfeit his challenge to the indictment's top count, we turn to the

substance of his claim. Although County Court was of the view that defendant's saliva could be a "dangerous instrument" within the meaning of Penal Law § 10.00 (13)[5] because it is a "substance," we began our analysis in *Owusu* by recognizing that "a part of one's body is not encompassed by the terms 'article' or 'substance' as used in the statute" (93 NY2d at 400-401). From that basic and, we thought, uncontroversial premise, we continued, to address the question of whether a body part, although not a "substance" or an "article," might nonetheless be deemed an "instrument" under the statute. In concluding that an individual's body part could not be so deemed and, thus, that body parts, even if otherwise corresponding to the terms "substance," "article" or "instrument," categorically could not qualify as "dangerous instruments" within the meaning of Penal Law § 10.00 (13), we sought not simply to reach a textually and historically correct understanding of what the Legislature meant to encompass (and to exclude), but to avoid the anomalies that would result if criminal liability varied with the corporeal attributes of assailants and their victims. We explained that the inclusion of body parts within the universe of potential "dangerous instruments" would, under Penal Law § 10.00 (13), render "the size of the perpetrator, his weight, strength, etc., as well as any infirmities or frailties of the victim . . . relevant in understanding one's ability to cause serious physical injury or death. A sliding scale of criminal liability (the extraordinary man anomaly) would be the result" (*Owusu*, 93 NY2d at 404). To avoid such an anomaly, our jurisprudence, we observed, had "drawn the line at a reasonable interpretation of the term 'instrument' and ha[d] not included within it a person's hands or other body parts" (*id.*). "Owusu's teeth came with him" and thus could not themselves qualify as a predicate to heighten his criminal liability beyond that justified by his victim's injury (*id.* at 405). Because defendant's saliva too "came with him"—indeed, with his teeth—its utility for penal enhancement may not be treated differently.

It is important to stress that the limitation we recognized in *Owusu* and which we now reaffirm does nothing to diminish the

---

**5.** The statute provides: " 'Dangerous instrument' means any instrument, article or substance, including a 'vehicle' as that term is defined in this section, which, under the circumstances in which it is used, attempted to be used or threatened to be used, is readily capable of causing death or other serious physical injury."

State's power to punish a defendant according to the harm actually inflicted (*see id.* at 405). All that is limited is its power to heighten liability solely by reason of corporeal attributes.

Accordingly, the order of the Appellate Division should be modified by dismissing the count of the indictment charging aggravated assault upon a police officer or peace officer, and remitting to Herkimer County Court for resentencing and, as so modified, affirmed.

Judges CIPARICK, GRAFFEO, READ, SMITH, PIGOTT and JONES concur.

Order modified, etc.