# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

1196
KA 13-00320
PRESENT: SMITH, J.P., PERADOTTO, LINDLEY, VALENTINO, AND WHALEN, JJ.

_____

THE PEOPLE OF THE STATE OF NEW YORK, APPELLANT,

V                                    MEMORANDUM AND ORDER

TERRANCE WILLIAMS, DEFENDANT-RESPONDENT.

_____

WILLIAM J. FITZPATRICK, DISTRICT ATTORNEY, SYRACUSE (JAMES P. MAXWELL OF COUNSEL), FOR APPELLANT.

FRANK H. HISCOCK LEGAL AID SOCIETY, SYRACUSE (KRISTEN MCDERMOTT OF COUNSEL), FOR DEFENDANT-RESPONDENT.

-----------------------------------------------------------------------------------------------------------

Appeal from an order of the Supreme Court, Onondaga County (John J. Brunetti, A.J.), dated August 10, 2012. The order reduced a count of the indictment.

It is hereby ORDERED that the order so appealed from is unanimously affirmed.

Memorandum: The People appeal from an order that granted in part defendant's motion to dismiss the indictment based on the legal insufficiency of the evidence before the grand jury by reducing the first count of the indictment. We affirm. Contrary to the contention of the People, we conclude that the evidence presented to the grand jury is not legally sufficient to establish a prima facie case of reckless endangerment in the first degree (Penal Law § 120.25), and Supreme Court therefore properly reduced that count to reckless endangerment in the second degree (§ 120.20). Legally sufficient evidence is "competent evidence which, if accepted as true, would establish every element of an offense charged and the defendant's commission thereof" (CPL 70.10 [1]; *see People v Jensen*, 86 NY2d 248, 252). "In the context of a [g]rand [j]ury proceeding, legal sufficiency means prima facie proof of the crimes charged, not proof beyond a reasonable doubt" (*People v Bello*, 92 NY2d 523, 526).

Pursuant to Penal Law § 120.25, "[a] person is guilty of reckless endangerment in the first degree when, under circumstances evincing a depraved indifference to human life, he [or she] recklessly engages in conduct which creates a grave risk of death to another person" (*see People v Boutin*, 81 AD3d 1399, 1399-1400, *lv denied* 17 NY3d 792). Depraved indifference to human life is a culpable mental state that has "the same meaning in both the depraved indifference murder statute and the reckless endangerment statute" (*People v Feingold*, 7 NY3d 288, 290; *see People v Lewie*, 17 NY3d 348, 358). "[D]epraved indifference

is best understood as an utter disregard for the value of human life—a willingness to act not because one intends harm, but because one simply doesn't care whether grievous harm results or not" (*Feingold*, 7 NY3d at 296 [internal quotation marks omitted]).  To evince depraved indifference, the actor's reckless conduct must be so imminently dangerous that it presents a grave risk of death (*see People v Graham*, 14 AD3d 887, 889, *lv denied* 4 NY3d 853).  "[T]his calculus requires an objective assessment of the degree of risk presented by defendant's reckless conduct" (*id.* [internal quotation marks omitted]*; see People v Lynch*, 95 NY2d 243, 247).  Generally, the conduct of a person who acts with depraved indifference to human life endangers a number of people, such as when a person fires a weapon into a crowd (*see People v Suarez*, 6 NY3d 202, 214).  Courts, however, have upheld depraved indifference convictions involving conduct that endangered only one person where the defendant's actions "reflect wanton cruelty, brutality or callousness directed against a particularly vulnerable victim, combined with utter indifference to the life or safety of the helpless target of the perpetrator's inexcusable acts" (*id.* at 613; *see Boutin*, 81 AD3d at 1400; *People v Coon*, 34 AD3d 869, 870).

Here, we conclude that the evidence before the grand jury, viewed in the light most favorable to the People (*see People v Jennings*, 69 NY2d 103, 114), was legally insufficient to support a finding that defendant acted with depraved indifference to human life (*see* Penal Law § 120.25; *Lewie*, 17 NY3d at 359).  Specifically, the evidence established that defendant engaged in unprotected sex with the victim on two to four occasions without disclosing his HIV positive status.  Shortly after their sexual relationship ended, defendant told the victim that a former sexual partner had tested positive for HIV and urged the victim to be tested.  The victim was diagnosed as HIV positive several months later.  We conclude that, although defendant may have acted with indifference to the victim's health, his conduct lacked the " 'wanton cruelty, brutality, or callousness' " required for a finding of depraved indifference toward a single victim (*Coon*, 34 AD3d at 870).  Defendant told the police that he did not disclose his HIV positive status to the victim because he was "afraid [the victim] would not want to be with" him, and that he "loved [the victim] so very much."  Defendant wrote a letter apologizing to the victim because he was "so upset" and "felt terrible."  The fact that defendant encouraged the victim to be tested for HIV indicates that defendant "was trying, however weakly and ineffectively," to prevent any grave risk that might result from his conduct (*Lewie*, 17 NY3d at 359).  We thus conclude that, "while the evidence certainly shows that defendant cared much too little about [the victim]'s safety, it cannot support a finding that [he] did not care at all" (*id.*).

We further conclude that the grand jury evidence, viewed in the light most favorable to the People (*see Jennings*, 69 NY2d at 114), also did not establish that defendant's conduct presented a grave risk of death to the victim (*see* Penal Law § 120.25; *Lynch*, 95 NY2d at 247).  The victim's physician, an infectious disease expert, testified that the ability to treat HIV has increased dramatically over the past 15 years, with over 20 different antiviral medications available for treatment.  The expert testified that although an HIV positive

diagnosis may have been tantamount to a death sentence in the past, with treatment, the prognosis today is "outstanding," particularly when a patient promptly learns that he or she is infected and seeks treatment.  Indeed, the expert testified that patients with HIV who take their medication, eat well, do not smoke, and reduce their alcohol intake can live a "very healthy, normal lifestyle," and he expected a similar prognosis for the victim.  We thus conclude that, under the circumstances of this case, the People failed to establish that defendant's reckless conduct posed a grave or "very substantial" risk of death to the victim (*People v Roe*, 74 NY2d 20, 24).

Entered:  November 15, 2013                        Frances E. Cafarell
                                                   Clerk of the Court