People v Alay (2021 NY Slip Op 02551)





People v Alay


2021 NY Slip Op 02551


Decided on April 28, 2021


Appellate Division, Second Department


Hinds-Radix, J., J.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on April 28, 2021
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

REINALDO E. RIVERA, J.P.
SYLVIA O. HINDS-RADIX
FRANCESCA E. CONNOLLY
ANGELA G. IANNACCI, JJ.


2013-08548

[*1]People of State of New York, respondent,
v
Uver Alay, appellant.



APPEAL by the defendant from an order of the Supreme Court (Gregory Lasak, J.), dated August 5, 2013, and entered in Queens County, which after a hearing, designated him a level two sexually violent offender pursuant to Correction Law article 6-C.



Janet E. Sabel, New York, NY (Svetlana M. Kornfeind of counsel), for appellant.
Melinda Katz, District Attorney, Kew Gardens, NY (Johnette Traill, Nancy Fitzpatrick Talcott, and Adarna De Frietas of counsel), for respondent.



HINDS-RADIX, J.


OPINION & ORDER
In this proceeding pursuant to the Sex Offender Registration Act (Correction Law art 6-C; hereinafter SORA), the issues are whether infecting a victim with the human immunodeficiency virus (hereinafter HIV) constitutes a physical injury, and, if so, whether the defendant was properly assessed 15 points for inflicting physical injury upon the victim, rendering him a presumptive level two sexually violent offender. The assessment of those points was based upon the fact that the defendant was diagnosed with HIV, the victim informed the prosecutor that he too tested positive for HIV, and the victim claimed he was infected by the defendant.
The defendant, born in 1967, was a friend of and was taken in by the victim's family. Between 2001 and 2006, the defendant engaged in anal and oral sex with the victim, who was born in 1989. The victim told his father, who did not live with the family, of these acts and the police were notified. The defendant was arrested months later, on October 20, 2006. Shortly thereafter, the defendant was diagnosed with HIV.
The defendant was indicted, inter alia, for course of sexual conduct against a child in the first degree, pleaded guilty to that charge in satisfaction of the indictment, and was sentenced to a prison term of eight years, to be followed by five years of postrelease supervision pursuant to a negotiated plea agreement. By virtue of his conviction of course of sexual conduct against a child in the first degree, the defendant was automatically designated a sexually violent offender (see Correction Law § 168-a[3][a]; People v Putland, 187 AD3d 1073; People v Alvarez, 166 AD3d 570; People v Bullock, 125 AD3d 1).
In anticipation of his release from prison, the Board of Examiners for Sex Offenders assessed the defendant 25 points for sexual contact with the victim, 20 points because the conduct started when the victim was 11 years old, and 20 points for a continuing course of sexual misconduct, for a total of 65 points, which are undisputed. This points assessment rendered the defendant presumptively a level one sexually violent offender.
By notice pursuant to Correction Law § 168-d(3), and a departure statement pursuant to Correction Law § 168-n(3), the People sought the assessment of 15 additional points under risk factor 1 for "use of violence" "in that the defendant inflicted physical injury in that the defendant [*2]infected the child victim with HIV-causing continued medical attention and medicine-prolonged impairment of his health" (emphasis in original). With those additional 15 points, the defendant would presumptively be a level two sexually violent offender. The People also sought an upward departure from that presumptive risk level or an override to level three based upon the "chronic nature of the sexual abuse" and the infection of the victim with HIV based upon "conversations with the crime victim that he was HIV positive as a result of the unprotected sexual penetrations by defendant." With respect to the request for an override, the People argued that infection with HIV constituted a serious physical injury.
The People supported their departure statement with a copy of their motion for release of the defendant's medical records, made in the defendant's underlying criminal proceeding. In an affirmation in support of that motion, an Assistant District Attorney stated that the victim "has tested positive for the HIV virus and it is the [P]eople's contention that the defendant transmitted that virus to him by engaging in repeated and unprotected anal and oral sexual contact and penetration." As evidence of the repeated acts of sexual penetration, the People submitted a copy of the criminal court complaint.
The defendant, in opposition, argued that transmitting HIV was not a physical injury because it did not constitute "impairment of physical condition or substantial pain" (Penal Law § 10.00[9]), on the ground that HIV could lay dormant, and could also be successfully managed with medication, allowing HIV-positive persons to lead normal lives. The defendant further argued that the People did not show that the victim was infected with HIV, or that the defendant infected the victim with HIV. The defendant argued that "what the complainant told the district attorney's office was not made under oath or with any indicia of reliability," nor was there any evidence that the defendant was the victim's only sexual partner in the period when the victim could have become infected. Further, the defendant was only diagnosed with HIV months after the abuse of the victim ceased, therefore it was possible that the defendant became infected after the abuse of the victim occurred.
At the SORA hearing, the defendant's medical records, establishing that the defendant was diagnosed with HIV shortly after his arrest in 2006, were admitted in evidence without objection. The People noted that the defendant tested positive for HIV upon his arrest and was "HIV positive since incarceration." The People relied upon statements in their prior motion papers, referring to conversations with the victim to represent that "upon information and belief our conversations with the child victim in this matter regarding the same issue regarding the repeated anal and oral unprotected contact, sexual contact and that the child victim here was diagnosed HIV positive," as proof that the defendant inflicted physical injury.
Defense counsel argued that the People failed to establish that the victim was infected with HIV, and if he were infected with HIV, that he was infected by the defendant. Defense counsel reiterated the argument that the last instances of abuse of the victim by the defendant occurred months prior to the defendant's arrest and diagnosis with HIV; therefore, there was no way of knowing if the defendant was infectious at the time the abuse occurred.
The Supreme Court assessed the defendant an additional 15 points for inflicting physical injury upon the victim by infecting him with HIV. Based upon the assessment of 15 additional points, the defendant was designated a level two sexually violent offender. The People's application for an override to level three was denied.
Infecting a victim with a sexually transmitted disease could be a basis for an upward departure from a defendant's presumptive risk level (see People v Ashby, 56 AD3d 633). However, the instant case did not involve an upward departure from the defendant's presumptive risk level. Rather, the defendant was assessed 15 additional points under risk factor 1.
Risk factor 1 applies to "[u]se of violence" which warrants the assessment of points because the use of violence is "positively correlated with [the] likelihood of reoffending" and is also "strongly associated with how dangerous an offender is to the community" (SORA: Risk Assessment Guidelines and Commentary at 7 [2006] [hereinafter Guidelines]). "To avoid ambiguity, the guidelines use terms that are defined in the Penal Law" (id. at 8; see People v Sullivan, 64 AD3d 67, 73).
The use of violence may be based upon the use of forcible compulsion, the use of a dangerous instrument, or the infliction of physical injury. The statutory definition of "physical injury" is "impairment of physical condition or substantial pain" (Penal Law § 10.00[9]). At issue here is whether infection with HIV constitutes an impairment of physical condition.
The defendant at the SORA hearing cited People v Plunkett (19 NY3d 400), in which the Court of Appeals held that use of a body part, such as teeth, or bodily fluids infected with HIV, does not constitute use of a dangerous instrument (see People v Owusu, 93 NY2d 398). The Court of Appeals has noted that "[i]ncreased criminal liability arises from the use or threatened use of a dangerous instrument because the actor has upped the ante by employing a device [outside of himself or herself] to assist in the criminal endeavor" (id. at 405). Body parts are not considered dangerous instruments to "avoid the anomalies that would result if criminal liability varied with the corporeal attributes of assailants," imposing criminal liability based upon whether the inherent attributes of a defendant were capable of inflicting injury—not whether the defendant actually inflicted injury (People v Plunkett, 19 NY3d at 408). The Court of Appeals stressed that its finding that a body part was not a dangerous instrument "does nothing to diminish the State's power to punish a defendant according to the harm actually inflicted" (id. at 408-409). Consequently, if a defendant uses a body part to inflict injury, the defendant may be punished for inflicting that injury. The question here is whether the defendant used his body to inflict physical injury upon the victim by infecting him with HIV.
On the question of whether infecting a victim with HIV constitutes a physical injury, the use of an instrument outside of a defendant's body—such as a hypodermic needle—which the defendant claims is contaminated with HIV, constitutes use of a dangerous instrument, since the manner in which it is threatened to be used "'is readily capable of causing death or other serious physical injury'" (People v Nelson, 215 AD2d 782, 783, quoting Penal Law § 10.00[13]; see State of New Jersey v Ainis, 317 NJ Super 127, 132, 721 A2d 329, 332; People v Autry, 232 Cal App 3d 365, 368-369). However, other case law indicates that infection with HIV is not a serious injury, since medical advances in recent years mean that HIV no longer poses a grave risk of death (see People v Williams, 111 AD3d 1435, 1437, affd on other grounds 24 NY3d 1129).
In this case, the assessment of 15 points only required a finding of physical injury, not serious physical injury. It is well-settled that impairment of physical condition does not require incapacitation (see People v Tejeda, 78 NY2d 936, 938). An injury which requires HIV testing or preventative treatment may be considered a physical injury (see People v Hilliard, 10 Misc 3d 1038 [Westchester County Court]; Commonwealth v Childs, 2013 WL 11279801, 2013 PA Super Unpub LEXIS 3896 [Super Ct, No. 1793 EDA 2010]). The People's contention was that the victim was actually infected with HIV— a condition that would require lifetime medical treatment (see Smith v Carpenter, 316 F3d 178, 185 [2d Cir]; Opati v Republic of Sudan, 60 F Supp 3d 68, 79 [DDC]). Accordingly, we conclude that infection with HIV constitutes a physical injury. The question of whether an HIV infection could constitute a serious physical injury is not before us on this appeal.
However, the proof that the defendant infected the victim with HIV was deficient. The defendant's medical records indicated that he had HIV upon his arrest, months after the last encounter between the defendant and the victim. However, to ascertain the victim's HIV status, the prosecutor relied upon the victim's oral statements. Further, it appears from the record that the victim learned of his alleged HIV status long after the defendant's abuse ended.
At the SORA hearing, the People bore "the burden of proving the facts supporting the determinations sought by clear and convincing evidence"(Correction Law § 168-d[3]; see People v Mingo, 12 NY3d 563, 571). Points "'should not be assessed for a factor . . . unless there is clear and convincing evidence of the existence of that factor'" (People v Pettigrew, 14 NY3d 406, 408, quoting Guidelines at 5). Clear and convincing evidence is defined as evidence which makes it "highly probable" that what is claimed happened actually happened (People v Warrior, 57 AD3d 1471, 1472 [internal quotation marks omitted]; see Matter of Ferreyra v Arroyo, 35 NY3d 127, 128).
"In making the determinations, the court shall review any victim's statement and any relevant materials and evidence submitted by the sex offender and the district attorney" (Correction Law § 168-d[3]; see People v Mingo, 12 NY3d at 571). "This evidence can be derived from the sex offender's admissions; the victim's statements; the evaluative reports of the supervising probation officer, parole officer or corrections counselor; or from any other reliable source" (Guidelines at 5; see People v Mingo, 12 NY3d at 572). The court "may consider reliable hearsay evidence submitted by either party, provided that it is relevant to the determinations" (Correction Law § 168-n[3]).
"Reliable hearsay" includes "evidence New York courts have consistently deemed reliable in SORA proceedings" (People v Mingo, 12 NY3d at 572). "SORA adjudications, by design, are typically based on documentary evidence under the statute's 'reliable hearsay' standard" (People v Diaz, 34 NY3d 1179, 1181). Information found in case summaries prepared by the Board [*3]of Examiners for Sex Offenders and presentence reports prepared by a probation department are admissible without foundation "because such documents are created under statutory mandates and their origins and function are well-known to SORA courts" (People v Mingo, 12 NY3d at 573).
However, where the information submitted is derived from unsigned reports which were not independently verified, the information may be insufficient to satisfy the People's burden of proof by clear and convincing evidence (see People v Brown, 7 AD3d 831). Further, although a victim's statements are generally admissible (see People v Leibach, 39 AD3d 1093, 1094), not all statements by a victim are considered reliable hearsay (see People v Stewart, 61 AD3d 1059, 1060). "[U]nsworn statements of the victim are admissible if there is a requisite indicia of reliability" (People v Sincerbeaux, 27 NY3d 683, 688; see People v Mingo, 12 NY3d at 567), and the statement is not "'equivocal, inconsistent with other evidence, or . . . dubious in light of other information in the record'" (People v Law, 94 AD3d 1561, 1563, quoting People v Mingo, 12 NY3d at 577). In this case, the victim's unsworn statements did not satisfy that standard.
The victim's statements were not submitted to the Supreme Court in written documentary form, which would have permitted an analysis of the declarations verbatim. Further, the People claimed that the victim represented that he "tested positive" for HIV. The victim's statements as to his HIV status, as paraphrased by the People, constituted either an unverified opinion, or a repetition of hearsay from another source, the identity of which is not apparent from the record, and, therefore, is not necessarily reliable. "[C]onclusory hearsay" has been rejected (People v Kowal, 175 AD3d 1057, 1058).
A defendant's statements as to his or her medical condition—unsupported by any records or evidence from a medical or health professional—have been rejected (see People v Goodwin, 49 AD3d 619), and there is no reason why the same rule should not apply to the People, who are held to a higher standard of proof. Points may be assessed at a SORA hearing based upon physical injury to the victim, based on "clear and convincing evidence in the record, including medical evaluations" (People v Hernandez, 163 AD3d 1010, 1011; see People v Picariello, 145 AD3d 804). However, here, no medical evaluations of the victim were in evidence, and the alleged impairment would not be apparent to a layperson.
Nor was there sufficient proof by clear and convincing evidence that if the victim was infected with HIV, the defendant was the source of the infection. The victim's statements as to the nature of the crime—which were admissible and corroborated by documentary evidence—indicate that the defendant may have had the opportunity to infect the victim with HIV—if he were infected with HIV at the time the crime occurred. However, there is no evidence in the record that the defendant was HIV-positive at the time of the crime, which was months before his diagnosis. Nor is there any evidence that the defendant was the only likely source of an HIV infection, if the victim were indeed infected.
Since the assessment of 15 additional points was not established by clear and convincing evidence, those points should be removed from the points assessment, rendering the defendant a presumptive level one sexually violent offender. Accordingly, the order is reversed, on the law and the facts, and the defendant is designated a level one sexually violent offender.
RIVERA, J.P., CONNOLLY and IANNACCI, JJ., concur.
ORDERED that the order is reversed, on the law and the facts, without costs or disbursements, and the defendant is designated a level one sexually violent offender.
ENTER:
Aprilanne Agostino
Clerk of the Court