MANSFIELD, Justice (dissenting).
I respectfully dissent. Constitutional interpretation is not Darwinian evolution, and a decision of this court today is not superior to the decisions that preceded it just because it is more recent. Whether this court is on a "constitutional march to become better" should be determined by others, not by ourselves.
While it is tempting to agree that "[i]nnocent people should always have a forum to prove their innocence," the realities of any criminal justice system are more complex. Even the majority does not take this statement literally. For example, even the majority accepts for now the limits in Iowa Code chapter 822 on claims brought by those who say they are actually innocent.
I join Justice Waterman's dissent, and write separately only to highlight several points.
First, this case does not involve an actual recantation.
Second, the rule that a guilty plea waives all defenses and objections which are not intrinsic to the plea is both long-standing and sound.
Third, the court has provided no doctrinal basis for grounding an actual-innocence claim in the Iowa Constitution.
Fourth, the court leaves many questions unanswered that will have to be sorted out by our district judges in the coming years.
I. The Supposed Recantation Is Not a Recantation.
Here is the so-called recantation that is launching a thousand ships:
I was the victim in [case number]. Jacob Schmidt is my brother. I am currently 23 years of age, but was a child at the time of the criminal case. At the time of the original criminal case, I had told various people that Jacob had sexually abused me. When I was 21 years old, I told other people that Jacob had never touched me in a sexual way or sexually abused me. I didn't tell anyone before that date that nothing had really happened, and so Jacob couldn't have known before then. I decided to tell people when I turned 21 since I was a full adult at that time. I want to see my brother and tell him I am sorry that I couldn't tell anyone before then.
*818 This is hardly a recantation. Nowhere does Schmidt's brother deny that the sexual assault actually occurred. He merely states that he has recently been telling people it didn't occur. Nor does the brother explain why he changed his story.
Just two years ago, in Estate of Gray ex rel. Gray v. Baldi , we applied the "contradictory affidavit rule." 880 N.W.2d 451, 463-64 (Iowa 2016). Under this rule, an affidavit that contradicts prior sworn testimony does not create an issue of fact if it "clearly and unambiguously contradicts [the] earlier sworn testimony" unless the affiant offers "a reasonable explanation for any apparent contradiction." Id . Since the court purports to be applying civil summary judgment standards, Estate of Gray may well indicate that there is no issue of fact here, even if a change in our long-standing law on guilty pleas were appropriate.
II. We Should Stand by Our Existing Law on the Finality of Guilty Pleas.
A change in the law is not needed. Our court should adhere to its long-standing rule that "a defendant's guilty plea waives all defenses and objections which are not intrinsic to the plea." State v. Carroll , 767 N.W.2d 638, 641 (Iowa 2009).
A. Our Precedent Is Clear and Well-Settled . In Carroll , we accurately said that this rule is "well-established." Id . I would not abandon our settled precedent, unanimously reaffirmed eight years ago in Carroll and two years after that in State v. Utter . See State v. Utter , 803 N.W.2d 647, 651 (Iowa 2011) (quoting Carroll with approval and explaining its significance); see also Castro v. State , 795 N.W.2d 789, 792 (Iowa 2011) ("Generally, a criminal defendant waives all defenses and objections to the criminal proceedings by pleading guilty."); State v. Mattly , 513 N.W.2d 739, 740-41 (Iowa 1994) (stating that "a valid guilty plea waives all defenses and objections (except that the information or indictment charges no offense or any irregularities intrinsic in the plea itself)"); State v. Garner , 469 N.W.2d 698, 699 (Iowa 1991) ("By pleading guilty ..., Garner waived the right to challenge those convictions on any ground not intrinsic to the pleas."); State v. Everett , 372 N.W.2d 235, 237 (Iowa 1985) ("[A] guilty plea would have waived all defenses or objections which were not intrinsic to the plea itself."); State v. Boge , 252 N.W.2d 411, 413 (Iowa 1977) ("[B]y entering a plea of guilty, defendant waived any defense or objection which is not intrinsic to the plea itself.").
What does "intrinsic to the plea" mean? It means a defendant who pleads guilty can later argue that the plea was "unintelligent or involuntary." Carroll , 767 N.W.2d at 642-44. This includes the situation where the defendant received ineffective assistance of counsel "in connection with the plea." Id. at 642. All such matters are intrinsic to the plea. But later-discovered evidence-by definition-is extrinsic to the plea.
In State v. Speed , 573 N.W.2d 594 (Iowa 1998), we specifically held that new exculpatory evidence is not intrinsic to the plea and cannot be used to challenge a guilty plea. We explained,
Speed asserts new exculpatory evidence bears upon a defendant's plea because the amount of evidence the State has against a defendant affects the defendant's decision to plead guilty. This argument fails to distinguish between a defendant's tactical rationale for pleading guilty and a defendant's understanding of what a plea means and his or her choice to voluntarily enter the plea. Any subsequently-discovered deficiency in the State's case that affects a defendant's *819 assessment of the evidence against him, but not the knowing and voluntary nature of the plea, is not intrinsic to the plea itself.
Id. at 596.
State v. Alexander , 463 N.W.2d 421 (Iowa 1990), likewise reiterated that "a plea of guilty 'waives all defenses or objections which are not intrinsic to the plea itself.' " Id . at 422 (quoting State v. Morehouse , 316 N.W.2d 884, 885 (Iowa 1982), overruled on other grounds by State v. Kress , 636 N.W.2d 12, 20 (Iowa 2001) ). In Alexander , we relied on this rule to hold that a motion for new trial based on newly discovered evidence was not available for a defendant who had pled guilty. Id . at 422-23. We said, "Notions of newly discovered evidence simply have no bearing on a knowing and voluntary admission of guilt." Id . at 423.
It is true that Alexander contains the following enigmatic sentence at the end of the opinion: "The remedy Alexander seeks is available to him in the form of postconviction relief. See Iowa Code § 663A.2(4) (1989) [now Iowa Code § 822.2(1)(d ) (2014) ]." Id. The majority seizes on this single sentence to find that a defendant who pleads guilty can attack his or her guilty plea in postconviction-relief proceedings under Iowa Code section 822.2(1)(d ) based on newly discovered evidence.
I am not persuaded. The one-sentence dictum from Alexander cannot be right and, indeed, is inconsistent with the rest of the Alexander opinion. See 463 N.W.2d at 422. One can attack a guilty plea on grounds extrinsic to the plea or one cannot-the case cannot stand for both propositions. Given our many other decisions upholding the rule against extrinsic attacks on a plea, including not just Alexander but also decisions that preceded and followed Alexander , the stray sentence from Alexander must be regarded as an error. Certainly, it has been treated as a legal dead end. In the nearly thirty years since we decided Alexander , that sentence has never been quoted or cited by our court. Instead, for decades, until today, we have consistently followed the rule that a guilty plea waives all defenses and objections which are not intrinsic to the plea.
Westlaw will be busy tracking down and flagging the decisions of our court that, after today, are no longer good law.
B. Our Precedent Is Sound . The rule limiting challenges to guilty pleas is not just our precedent, it is the correct precedent, especially when one considers the interests of both defendants and the state. Although the majority in my view unfairly disparages plea agreements, painting the whole process as predatory, plea negotiations are a vital element of our justice system, and they ultimately benefit -and protect-defendants. See Susan R. Klein et al., Waiving the Criminal Justice System: An Empirical and Constitutional Analysis , 52 Am. Crim. L. Rev. 73, 114 (2015) (noting "that plea agreements are an integral part of the criminal justice system, conserving judicial resources and providing defendants the opportunity to obtain often much-needed reductions in sentences or dismissal of charges in return for a plea and the waivers of all trial rights").
I acknowledge that in the real world, defendants do at times plead guilty to offenses which, in a final reckoning, they did not commit. Typically, there are two reasons why this occurs. One is a strategic decision by the defendant to avoid other, more serious convictions or additional, more severe penalties that would result from going to trial. See, e.g. , State v. Ceretti , 871 N.W.2d 88, 89 (Iowa 2015) (noting that the defendant was charged with first-degree murder but pled guilty to voluntary manslaughter, attempted murder, and willful injury causing serious injury). The other *820 is when the defendant committed a crime to which she or he intended to plead guilty but the wrong crime was charged by mistake. See, e.g., State v. Nall , 894 N.W.2d 514, 525 (Iowa 2017) ("Under these facts, a factual basis may exist for a charge under section 714.1(6) (theft by check), but not under section 714.1(1)."). Neither of these scenarios calls for the drastic change in the law that the majority has announced today.
The majority cites one case from South Dakota and one case from New York before asking, rhetorically, "What kind of system of justice do we have if we permit actually innocent people to remain in prison?" Despite this sloganeering, the fact remains that both cases involved defendants who went to trial . See In re Kaufmann , 245 N.Y. 423, 157 N.E. 730, 730-31 (1927) ; Engesser v. Young , 856 N.W.2d 471, 473 (S.D. 2014).
Before a defendant pleads guilty, the law protects that defendant in several ways. First, a detailed colloquy is required. See Iowa R. Crim. P. 2.8(2)(b ). The defendant is informed he or she is giving up the right to a trial and there will not be a further trial of any kind. Id . r. 2.8(2)(b )(4)-(5). Until today, those were true statements.
Second, the record must show a factual basis for each charge to which the defendant is pleading guilty. See, e.g. , Nall , 894 N.W.2d at 525 ; Rhoades v. State , 848 N.W.2d 22, 33 (Iowa 2014) ; State v. Gines , 844 N.W.2d 437, 441 (Iowa 2014).
Third, as discussed above, the plea must be voluntary and intelligent, and if counsel was ineffective in some manner that rendered the plea involuntary or unintelligent, that can be raised. See Castro , 795 N.W.2d at 793-94 ; Carroll , 767 N.W.2d at 642-43.
In my view, these safeguards serve their intended purpose. "Once a defendant has waived his right to a trial by pleading guilty, the State is entitled to expect finality in the conviction." State v. Mann , 602 N.W.2d 785, 789 (Iowa 1999) ; see also State v. Straw , 709 N.W.2d 128, 138 (Iowa 2006).
While I expect today's decision to lead to a new wave of applications for postconviction relief, and more work for appointed counsel, prosecutors, and the courts, I do not see the need. Why are the legal grounds already established by this court and the legislature for relief from guilty pleas not enough?[15] Certainly, the present case-involving a fishy nonrecantation by the victim (and no recantation at all by the eyewitness father)-doesn't demonstrate the need.
The majority underplays the critical distinction between defendants who claim actual innocence following a jury trial conviction and those who claim actual innocence following a guilty plea. Most of the decisions cited by the majority involve a defendant who was convicted after a trial. See *821 Miller v. Comm'r of Corr ., 242 Conn. 745, 700 A.2d 1108, 1110-11 (1997) ; People v. Washington , 171 Ill.2d 475, 216 Ill.Dec. 773, 665 N.E.2d 1330, 1331 (1996) ; State ex rel. Amrine v. Roper , 102 S.W.3d 541, 543-44 (Mo. 2003) (en banc); Montoya v. Ulibarri , 142 N.M. 89, 163 P.3d 476, 478 (2007) ; In re Kaufmann , 157 N.E. at 730-31 ; Engesser , 856 N.W.2d at 473. In Jamison v. State , 410 S.C. 456, 765 S.E.2d 123, 130 (2014), the Supreme Court of South Carolina did open the door to actual-innocence claims by persons who had pled guilty but it established a very high burden for them-one the majority characterizes as "too stringent." Also, in People v. Tiger , 149 A.D.3d 86, 48 N.Y.S.3d 685, 700-01 (2017), the court recognized an actual-innocence claim by a defendant who had pled guilty, although New York's highest court has clearly not gone that far, see People v. Plunkett , 19 N.Y.3d 400, 948 N.Y.S.2d 233, 971 N.E.2d 363, 366 (2012) ("Consistently, we have deemed appellate claims challenging what is competently and independently established by a plea forfeited."); see also People v. DePerno , 148 A.D.3d 1463, 51 N.Y.S.3d 641, 643 (2017) (finding by a different department of the appellate division that an actual-innocence claim after a guilty plea was foreclosed). The majority also discusses Ex parte Tuley , 109 S.W.3d 388, 393 (Tex. Crim. App. 2002), a 5-4 Texas decision that opened the door to actual-innocence claims following a guilty plea, and People v. Schneider , 25 P.3d 755, 757 (Colo. 2001) (en banc), a Colorado decision that did the same.
Iowa is not alone in giving finality to guilty pleas notwithstanding claims of actual innocence. See, e.g., Williams v. State , 2017 Ark. 313, 530 S.W.3d 844, 846 (2017) ("Williams's argument that he is actually innocent of the offense to which he pleaded guilty does not establish a ground for the writ because it constitutes a direct attack on the judgment."); Norris v. State , 896 N.E.2d 1149, 1153 (Ind. 2008) (rejecting an actual innocence claim and stating that "[a] plea of guilty thus forecloses a post-conviction challenge to the facts adjudicated by the trial court's acceptance of the guilty plea and resulting conviction"); Woods v. State , 52 Kan.App.2d 958, 379 P.3d 1134, 1142 (2016) (stating that a claim of actual innocence is "insufficient to override the longstanding rule that a freely and voluntarily entered guilty plea bars a collateral attack on the sufficiency of the evidence").
One should also read the articles cited by the majority. One of the articles is written by a senior federal judge and another by a former federal judge. Jed S. Rakoff, Why Innocent People Plead Guilty , N.Y. Rev. Books (Nov. 20, 2014), www.nybooks.com/articles/2014/11/20/why-innocent-people-plead-guilty/ [https://perma.cc/LT8T-XKAV]; H. Lee Sarokin, Why Do Innocent People Plead Guilty? , Huffington Post (May 29, 2012, 4:39 PM), https://www.huffingtonpost.com/judge-h-lee-sarokin/innocent-people-guilty-pleas_b_1553239.html/[https://perma.cc/6PSQ-6ZW4]. As participants in the system, the views of these two authors deserve our consideration. Yet neither of these authors recommends today's solution-i.e., a freestanding claim of innocence as a way to challenge guilty pleas. To the contrary, Judge Rakoff advocates "involving judges in the plea-bargaining process," while Mr. Sarokin insists "[t]he only solution is vigilance by all involved."
Reexamining a guilty plea years after the fact is far different from reviewing a trial. Unlike with a case that actually went to trial, no trial transcript can be relied on if the witnesses no longer are around, have forgotten the events, or no longer are motivated to remember them. See Rhoades , 880 N.W.2d at 449 (acknowledging the difficulty in accurately determining a claim of *822 actual innocence when there has been a plea bargain and no trial record exists).
Under Maryland law, convicted persons may not petition for a writ of actual innocence if they have pled guilty. Md. Code Ann., Crim. Proc. § 8-301 (West, Westlaw through ch. 1-4 2018 Reg. Sess.). The Maryland Court of Special Appeals has noted,
Under most circumstances, the facts alleged in a petition for postconviction relief will necessarily, in part, be drawn from the trial record. However, when there was a guilty plea, there is no detailed trial record, no witness testimony, and often there is only a minimal factual investigation on the part of the State and defense counsel. Thus, both the defense's factual quest to establish innocence as well as the State's attempt to refute innocence are hindered by the inherent gaps available in evidence in cases in which the petitioner pled guilty. Petitions stemming from a conviction following a guilty plea should thus be denied.
Yonga v. State , 221 Md.App. 45, 108 A.3d 448, 461 (2015) (emphasis omitted) (quoting Nicholas Phillips, Comment, Innocence and Incarceration: A Comprehensive Review of Maryland's Postconviction DNA Relief Statute and Suggestions for Improvement , 42 U. Balt. L.F. 65, 93-94 (Fall 2011) (footnotes omitted)), aff'd , 446 Md. 183, 130 A.3d 486 (2016).
Changes in the law intended to benefit defendants can end up harming them. Now that we have allowed guilty pleas to be set aside based on newly discovered evidence, the state has a powerful incentive not to accept such pleas, despite the benefits to defendants discussed above. The advantages of a plea from the state's perspective are that it provides certainty, closure, and finality. See Blackledge v. Allison , 431 U.S. 63, 71, 97 S.Ct. 1621, 1627-28, 52 L.Ed.2d 136 (1977). That is why the state is often willing to bargain down the original charges as part of a deal. Take away those advantages, and more cases may go to trial on more charges. See id. (noting that the advantages of plea negotiations to judges, prosecutors, and defendants "can be secured ... only if dispositions by guilty plea are accorded a great measure of finality").
III. Grounding an Actual-Innocence Claim in the Iowa Constitution Is Highly Problematic.
The majority maintains that an actual-innocence claim for those who plead guilty is required by the Iowa Constitution, specifically article I, section 9 and article I, section 17. It is noteworthy that Schmidt barely argues Iowa constitutional law at all and then only in the supplemental brief which we invited.
The majority's constitutional reasoning is thin and, to me, unpersuasive. I begin with article I, section 9, the Iowa due process clause. The majority initially asserts that convicting an actually innocent person violates article I, section 9's constitutional guarantee of substantive due process. According to the majority, it is a matter of substantive due process because the violation consists of the mere fact an innocent person has been convicted.
But the majority can't literally mean that-otherwise there would be no limits on actual-innocence claims. Thus, the majority shifts to the position that innocent people need to have an opportunity to prove they are innocent. That's a matter of procedural due process. Yet our justice system already has many procedures in place to protect innocent people from being convicted. These include the trial, the guilty plea colloquy, the right to counsel, and so forth.
*823 So what the majority is really saying is that the Iowa due process clause requires one more procedure , i.e., the one devised today, to protect the innocent from being convicted. Why? Why is one more procedure so important as to be of constitutional dimension? The majority does not explain.
Weaker still is the majority's invocation of article I, section 17. This section prohibits cruel and unusual punishments. Yet the issue before this court is not the punishment for Schmidt's crime, but whether Schmidt should have a new opportunity to prove he didn't commit that crime. Unless we are going to ignore the fundamental distinctions among the different rights within our own constitution, article I, section 17 has no bearing on today's case.
IV. The Majority Opinion Results in Many Unanswered Questions.
Having demonstrated enough self-confidence to tear up an established rule of law, the majority now claims to be too modest to tell us what today's decision means. That's not good enough. One way to test the soundness of a decision is to consider the implications of that decision.
Here are a few questions raised by today's decision.
What does "actual innocence" mean? The majority opinion is unclear and inconsistent concerning the meaning of "actual innocence." At the end the majority states,
[T]he applicant must show by clear and convincing evidence that, despite the evidence of guilt supporting the conviction, no reasonable fact finder could convict the applicant of the crimes for which the sentencing court found the applicant guilty in light of all the evidence, including the newly discovered evidence.
Yet earlier, the majority says, "Holding a person who has committed no crime in prison strikes the very essence of the constitutional guarantee of substantive due process." The two statements do not line up. Where are we?
Obviously, at a minimum, the defendant must prove he or she did not commit the crime to which he or she pled guilty. Must the defendant also prove his or her conduct does not amount to a different crime (even a much less serious one)? And what if the defendant pled guilty to several charges at once? Must the defendant establish that none of the incidents involve a crime committed by that defendant?
What is "evidence" at the summary judgment stage? The court directs the parties to provide "other evidence or affidavits" in support of their positions, before the district court rules on the State's motion for summary judgment. What is evidence? The majority indicates that the requirements of rule 1.981 apply. In that event, do minutes of testimony count as evidence, even if the defendant did not previously acknowledge they were true? The special concurrence seems to indicate that the minutes are treated as evidence.
What is "evidence" at the trial stage? If a claim of actual innocence gets past summary judgment, must all evidence used at the postconviction-relief trial comply with the rules of evidence? Again, what's the status of minutes of testimony?
If the normal rules of evidence for summary judgment and trial proceedings do not apply, how does the district court handle the resulting apples-to-oranges comparisons? If minutes of testimony are allowed as evidence, what weight are they given? How are they compared to affidavits and live testimony?
Does a defendant need to do anything other than deny his or her guilt to raise an actual-innocence claim and start the process? According to the court, a freestanding actual-innocence claim can be *824 brought under Iowa Code section 822.2(1)(a ). But if a claim of innocence by itself is enough, the defendant doesn't need a recantation or other allegedly new evidence, unless the three-year time bar has passed. See Iowa Code § 822.3. A mere denial of guilt is enough to get new counsel appointed and get the ball rolling.
What is the role of the defendant's guilty plea counsel? Typically, a claim of ineffective assistance of counsel waives the attorney-client privilege. See Iowa R. Prof'l Conduct 32:1.6(b)(5). So, when the defendant claims to have received ineffective assistance in connection with a plea, former counsel can testify about his or her communications with the defendant concerning the plea. These communications may have information bearing on the defendant's actual innocence. Is such testimony now off-limits, since the defendant can challenge the guilty plea without having to argue ineffective assistance of counsel?
What about Alford pleas? An Alford plea "was designed to permit a defendant to make a voluntary and intelligent decision to plead guilty to a crime without admitting participation in the underlying facts which constitute the crime." State v. Klawonn , 609 N.W.2d 515, 520 (Iowa 2000) (citing North Carolina v. Alford , 400 U.S. 25, 37-38, 91 S.Ct. 160, 167-68, 27 L.Ed.2d 162 (1970) ). With an Alford plea, the defendant "claim[s] innocence" but makes a "cost-benefit analysis of avoiding the risks associated with a trial." Id. at 520-21. After today, does someone who made an Alford plea now get to raise an actual-innocence claim? That seems strange. After all, nothing has changed. Such a defendant always maintained he or she was innocent. Or are Alford pleas now unconstitutional in light of today's decision?
If the defendant succeeds, can other charges be reinstated? Part of the established remedy when setting aside a guilty plea is to reinstate all charges dismissed as part of any plea bargain. See State v. Weitzel , 905 N.W.2d 397, 411 (Iowa 2017) (allowing the state to "reinstate any charges dismissed in contemplation of a valid plea bargain"); Gines , 844 N.W.2d at 442 ("[W]e must put the State back in the position it was in before making the plea agreement."); see also Ceretti , 871 N.W.2d at 97 ; State v. Allen , 708 N.W.2d 361, 369 (Iowa 2006). So, if the defendant establishes actual innocence and there was a plea bargain, does the state get to reinstate other charges that were dismissed?
The majority refuses to consider issues like these because it doesn't want to get into the merits of the case. But none of these matters goes to the actual merits. Some of them were discussed in the supplemental briefing invited by this court. If our court is going to change the law, it should clarify the change as much as possible and not leave it to district courts to play a game of twenty questions. In other decisions, we have given "protocols" to our district courts. See, e.g., State v. Harrington , 893 N.W.2d 36, 45-46 (Iowa 2017) (describing a "protocol" to use in the future); State v. Dahl , 874 N.W.2d 348, 353 (Iowa 2016) (same); Fagen v. Grand View Univ ., 861 N.W.2d 825, 828 (Iowa 2015) (plurality opinion) (same); State v. Cashen , 789 N.W.2d 400, 403 (Iowa 2010) (same), superseded by statute , 2011 Iowa Acts ch. 8, § 2 (codified at Iowa Code § 622.10 ).
V. Conclusion.
From the State's perspective, I am guessing it would have simply preferred to try Schmidt all those years ago. In the long run, I am doubtful today's decision will benefit defendants. More importantly, today's decision needlessly overturns an *825 established rule of law that was fair to all parties and worked well.
Waterman and Zager, JJ., join this dissent.

The majority observes that in 2005, the general assembly enacted legislation that appears to authorize a defendant who has pled guilty, as well as a defendant who was convicted after trial, to seek a court order requiring DNA analysis to be performed on evidence. See 2005 Iowa Acts ch. 158, § 10 (codified at Iowa Code § 81.10 ). Yet the legislation nowhere indicates that a defendant who pled guilty would have a postconviction-relief remedy based on the outcome of such analysis. See id. To the contrary, this law was enacted when our precedent on finality of guilty pleas was already well-established. I trust in our executive branch to do the right thing in the event a person who pled guilty were to be fully exonerated by DNA evidence. I presume the legislature in 2005 had the same level of trust. This is a far cry from allowing a nonrecanting recantation to disturb a guilty plea.